```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | HON. JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 03-735 (JBS) |
| v. | **OPINION** |
| CHATA COATING AND LAMINATING, INC., et al., | |
| Defendants | |
| ANTHONY M. BRIDA, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| SAMUEL P. MARTIN INSURANCE AGENCY, INC., | |
| Third-Party Defendant. | |

APPEARANCES:

Andrew Karonis, Esquire
SCHINDEL, FARMAN & LIPSIUS, LLP
4 Cornwall Drive
Suit 101
East Brunswick, New Jersey 08816
     Attorney for Plaintiff

George W. Wright, Esquire
GEORGE W. WRIGHT & ASSOCIATES, LLC
401 Continental Plaza
Hackensack, New Jersey 07601
     Attorney for Defendant/Third-Party Plaintiff
     Anthony M. Brida, Inc.

Michael O. Kassak, Esquire
WHITE and WILLIAMS, ESQS.
475 Haddonfield Road
Suite 400
Cherry Hill, New Jersey 08002
     Attorney for Third-Party Defendant Samuel P. Martin
     Insurance Agency, Inc.

**SIMANDLE**, U.S. District Judge

This insurance related dispute is before the Court upon the cross-motions for summary judgment by Hartford Fire Insurance Co. ("Hartford") and Anthony M. Brida, Inc. ("Brida"), as well as the motion for summary judgment by Brida against Samuel P. Martin Insurance Agency d/b/a the Martin Company ("Martin"). For the reasons expressed below, the Court will grant the motion by Hartford, and deny the motions by Brida.

## I. BACKGROUND

This action arises out of a suit filed on April 26, 2002 in the United States District Court for the District of South Carolina by Chata Coating and Laminating, Co. ("Chata") against Brida, as well as others, alleging that machinery belonging to Chata was damaged by water in the course of Brida's authorized transportation of that machinery in December 2001 ("Underlying Action"). The complaint in the Underlying Action alleges that the damage was caused by Brida's failure to tarp the machinery in the course of transportation and seeks damages, inter alia, for the loss of use of the allegedly damaged machinery, loss of profits, and loss of reputation and goodwill.

At all relevant times, Brida was a motor carrier authorized to transport goods for hire in interstate and intrastate commerce. On or about October 25, 1999, Hartford issued policy no. 13 UUM 1D8655 (the "Policy") to Brida, effective October 25,

2

1999 through October 19, 2000.  The Policy was procured through Martin, a licensed insurance agent, and provided coverage under Form MS 00 39 04 89 (the "Cargo Coverage Form") for those sums that Brida becomes legally obligated to pay under a contract of carriage for direct physical loss to property being transported by Brida.[1]

Section "B" of the Cargo Coverage Form contains the following exclusions from coverage:

> B. Exclusions
>
> 1. [Omitted Here]
>
> 2. We will not pay for "loss" caused by or resulting from any of the following.
>    a. Delay, loss of use, loss of market, or any other causes of consequential "loss".
>    b. [Omitted Here]
>    c. [Omitted Here]
>    d. Poor or insufficient packaging or packing of the Covered Property; or poor packing of the Covered Property in or on the transporting vehicle.
>    e. Rust, corrosion, contamination, leakage, breakage, marring, scratching, wetness, dampness or exposure to light or darkness. But we will pay for such direct physical "loss" to Covered Property caused by any of the "specified causes of loss", except as otherwise excluded.
>    f-j. [Omitted Here]

---

[1] A complete copy of the Policy was received by Brida no later than April 2000.  The Hartford Policy was renewed on the same terms and conditions from October 25, 2000 to October 25, 2001, and then from October 25, 2001 through October 25, 2002.  Shortly after the commencement of each policy period, Hartford would prepare a physical copy of the policy and forward it to Martin, which would then forward a complete copy to Brida.

(Grady Aff. Ex. A.)  "Specified causes of loss" as used in Exclusion B.2(e) is defined by the Policy to include, among other things, "water damage."  (Id., "General Definitions" C.21.)  As used in the Policy, "[w]ater damage means the damage resulting from the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam."  (Id. at C.21(b).)  Moreover, "[f]or property in transit, 'Specified Causes of Loss' also means . . . 'Flood,'" that term being defined as "[s]urface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not . . . ." (Id. at General Definitions C.12(a).)

On or about November 8, 1999, Martin forwarded to Hartford a request from one of Brida's customers concerning the coverage provided under a Hartford policy identical to the one at issue here.  Specifically, Great American Lines had asked Brida in writing whether the Hartford policy provided coverage for wetness, dampness or rust.  This inquiry had been forwarded by Brida to the Martin Agency, which in turn forwarded the inquiry to Hartford.  On November 8, 1999, Imelda Toland, Hartford's underwriter assigned to the Brida account, notified Jacqueline McAllister of the Martin Agency by fax that no coverage for

4

wetness, dampness or rust was provided by the Hartford Policy. On or about November 15, 1999, Ms. McAllister contacted Daniele Brida of Brida and advised her of Hartford's position that no coverage was afforded for wetness, rust, or corrosion.  On or about November 15, 1999, Ms. McAllister sent a fax to Ms. Brida confirming that conversation and forwarding Hartford's reply that no coverage was provided for wetness, dampness or rust under the policy.

On or about December 26, 2001, Hartford was advised by Martin of a potential cargo claim against Brida by Chata.  On or about March 19, 2002, Chata presented a formal written claim against Brida, which was forwarded to Hartford.  The written claim, alleging that Brida failed to properly tarp or otherwise protect the printing press which had been tendered to Brida for transport, included claims for losses of $703,000 for repair and lost profits not less than $9,869,378.  On or about April 18, 2002, Hartford advised Brida in writing that it was declining the claim on the grounds that the type of losses at issue were specifically excluded from the Policy.  Chata filed its complaint in federal district court in South Carolina on April 26, 2002.

On or about June 7, 2002, Hartford filed a declaratory judgment action against Chata and Brida in the United States District Court for the District of South Carolina seeking a declaration that Hartford has no obligations to provide Brida

5

with indemnity or a defense for Chata's claims against Brida. That declaratory judgment action was transferred to this Court on February 20, 2003 and the Underlying Action has been stayed pending the resolution of this action.  Brida has filed a counterclaim against Hartford for, among other things, negligence, as well as a third party complaint against Martin, also on a negligence theory.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the suit under the applicable rule of law.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by

6

a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.[2]

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Weissman v. United States Postal Serv., 19 F.Supp.2d 254 (D.N.J. 1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, Williams v. Philadelphia House Auth., 834 F.Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[2] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately has the burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**III. DISCUSSION**

Central to this controversy is the exclusionary provision contained at section B.2 of the Policy under the section entitled "Cargo Coverage – Carrier for Hire." (Grady Aff. Ex. A.) Under New Jersey law

> [i]t is well settled that insurance policies are contracts of adhesion and, as such, are subject to special rules of interpretation. In interpreting the language of an insurance contract, a court must first attribute to the words their plain and ordinary meaning. Indeed, in the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased.

Board of Educ. Of Florham Park v. Utica Mutual Insur. Co., 798 A.2d 605, 610 (N.J. 2002) (citations omitted).

    A.    Hartford and Brida's Cross Motions

Hartford has moved for summary judgment, seeking a declaration that it is not obligated to defend or indemnify Brida as a result of the alleged loss suffered by Chata. In short, Hartford argues that the plain language of the Policy specifically excludes the type of loss to cargo allegedly suffered here. Brida filed a cross motion for summary judgment, arguing that the Policy is ambiguous and, thus, Brida's reasonable expectations that the Policy would include coverage for damage caused by rain should be honored. This Court agrees with Hartford that no reasonable juror could find ambiguity in the policy exclusions for wetness and poor packaging and, thus, will grant Hartford's motion for summary judgment.

Exclusion B.2(e) of the Policy unambiguously excludes from the Policy's coverage "loss" caused by or resulting from, among other things, "[r]ust," "corrosion" or "wetness."  Brida argues that this language is ambiguous and, thus, should be construed in favor of Brida, the insured.  Specifically, that Exclusion B.2(e) explicitly provides indemnity for "direct physical 'loss'" "is in itself ambiguous and . . . contradictory to the inclusive language of the policy."  (Brida Opp. Br. at 7.)  Brida's argument overlooks the remainder of that provision which provides that Hartford "will pay for such direct physical 'loss' to Covered Property <u>caused by any of the 'specified causes of loss', except as otherwise excluded</u>."  (Grady Aff. Ex. A (emphasis added).)  Indeed, Brida bases its argument on the fact that "[n]owhere in the Hartford Policy is the term 'water damage' . . . mentioned or defined."  (Brida Opp. at 12.)  Clearly that is not the case, as that term is explicitly defined in the Policy.[3]

Second, the Policy explicitly excludes coverage for Brida's alleged failure to properly tarp the cargo.  Exclusion B.2(d) of the Policy states that Hartford "will not pay for 'loss' caused by or resulting from . . . [p]oor or insufficient packaging or packing of the Covered Property; or poor packing of the Covered Property in or on the transporting vehicle."  (Grady Aff. Ex. A.)

---

[3] In light of the unambiguous language of the exclusions, whether Brida had a reasonable expectation that coverage would be extended to damage caused by rain water is of no consequence here and does not create a material factual dispute.

9

Brida contends that "packing" or "packaging" is limited to the act of stowing an item in a container or making it into a compact bundle. (Brida Opp. Br. at 10.) Such a narrow application of that term in this context is unreasonable. Indeed, in <u>Bache v. Silver Line, Ltd.</u>, 110 F.2d 60 (2d Cir. 1940), Judge Learned Hand used the terms "cover," "stow," "wrap," "pack" and "case" almost interchangeably in the context of analyzing the sufficiency of the packaging of a shipment of rubber aboard a sailing vessel. Brida has offered no compelling reason why the application of "pack" should be construed more narrowly here. <u>See</u> <u>also</u> <u>O'Connell Machinery Co., Inc. v. M.V. Americana</u>, 797 F.2d 1130, 1134 (2d Cir. 1986) (holding ocean carrier could avail itself of "insufficiency of packing" defense under COGSA where "tarpaulin covering the machine constituted packaging that effectively concealed the cargo"); <u>ETS Gustave Brunet, S.A. M/V Nedloydd Rosario</u>, 929 F.Supp. 694, 702-703 (S.D.N.Y. 1996) (holding packing of cargo on a sailing vessel was insufficient where cargo was not properly tarped).[4]

Brida additionally argues that Hartford is liable for the acts of Martin, Hartford's agent, to the extent that Brida relied on Martin's representations that the Policy provided "all-risk"

---

[4] Brida additionally contends that the provision of the Policy covering damage caused by "windstorms" includes damage caused by rain. Hartford, while conceding that the Policy covers damage caused by a "windstorm," maintains that the term can not be reasonably interpreted to include damage caused by rain. The Court agrees with Hartford's commonsensical interpretation of that provision.

10

coverage.  Thus, Brida argues, insofar as Martin represented to Brida that it the Hartford policy would be an "all-risk" policy, that representation was binding on Hartford.  See Indus. Dev. Assoc. v. Commercial Union Surplus Lines Ins. Co., 536 A.2d 787 (N.J. Super. 1988) ("[T]he issuance of a certificate is evidence that a party is the insurer's agent or, in the alternative, that the insurer is bound by that party's acts under the doctrine of apparent agency or agency by estoppel.")  In the first instance, this argument overlooks the fact that "all-risk" policies regularly have exclusions.  See Pacific Tall Ships Co. v. Jkuehne & Nagel Inc., 76 F.Supp.2d 886, 893-94 (N.D.Ill. 1999) (citing Pan American World Airways, Inc. v. Aetna Cas. & Sur. Co., 505 F.2d 989, 999 (2d Cir. 1974)).  In any event, the Court holds that no reasonable juror could find that the placement of the exclusions in the Policy was not prominent.  In other words, Brida had, at the very least, sufficient notice of the terms of the Policy prior to the events giving rise to the Underlying Action.  Thus, Brida's argument to the contrary that additional "warnings" should have been separately included in the Policy is without merit, especially considering that this agreement was negotiated in the commercial context.

     For these reasons, the Court will grant the motion for summary judgment by Hartford and deny the cross-motion by Brida.

B.  Brida's Summary Judgment Motion against Martin

Brida filed a third party complaint against Martin claiming that Martin was negligent and breached its duty of good faith and fair dealing by failing to procure coverage for the sort of damage allegedly sustained by Chata.  Martin filed counterclaims seeking contribution and indemnification.  Brida now moves for summary judgment.  Because material issues of fact exist, the Court will deny this motion.

"Insurance broker" is defined under New Jersey law as "a person who, for a commission, brokerage fee, or other consideration, acts or aids in any manner concerning negotiation, solicitation or effectuation of insurance contracts as the representative of an insured or prospective insured; or a person who places insurance in an insurance company that he does not represent as an agent."  N.J.S.A. 17:22A-2(g).  "Insurance agent" is defined as "a person authorized, in writing, by any insurance company to act as its agent to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance policies on its behalf."  N.J.S.A. 17:22A-2(f).  Martin seemingly acted in both capacities in its role as broker for Brida and agent for Hartford.  In any event, "[b]oth agents and brokers are obliged to inform insureds of available coverage.  Agents, like brokers, are obligated to exercise good faith and reasonable skill in advising insureds."  Weinisch v. Sawyer, 587 A.2d 615,

618 (N.J. 1991). Moreover,

> an insurance broker, in dealing with his clients, ordinarily invites them to rely upon his expertise in procuring insurance that best suits their requirements. It is not necessary for the client in order to establish a breach of duty to prove that he laid out for the broker the elements of a contract of insurance. It is sufficient to show that he authorized procurement of the insurance needed to cover the risks indicated and that the broker agreed to do so but failed or neglected to perform his duty. The terms of the contract to procure the insurance, the scope of the risk and subject matter to be covered, may be found by implication. The principal does not sue on a contract of insurance; he seeks recovery for the loss occasioned by the failure to procure such a contract or such a valid contract. Moreover, if the broker agrees to obtain or to try to obtain the coverage he knows or should know the principal seeks, and he finds that he cannot procure it, he is bound to notify his principal of that fact with reasonable dispatch. Or, if it turns out to be impracticable to follow the instructions or request of his principal, a like duty of seasonable notice exists.

<u>Rider v. Lynch</u>, 201 A.2d 561, 567 (N.J. 1964) (citations omitted).

Here, Brida claims that Martin breached its duty to Brida by failing to procure a policy covering damage resulting from rainwater, despite its knowledge of the inherent risks posed by rain to flatbed operations. In fact, Brida maintains that in the Fall of 1999 it specifically informed Martin that it sought to procure coverage to match its pre-existing policy with Liberty Mutual, which did contain coverage for damage caused by rain. Martin, on the other hand, maintains that there exists a material issue of disputed fact as to whether Brida provided Martin with a copy of its pre-existing insurance policy with Liberty Mutual.

13

As a result, Martin contends, it was not aware of Brida's specific insurance needs. The Court is persuaded that this factual dispute should decided by a jury.

Brida further argues that Martin breached its duty of care by failing to advise Brida that Hartford was not providing the desired coverage. Indeed, Brida argues that Martin was told by Hartford in October 1999 that Form 40 coverage was not available to Brida. Moreover, Brida argues, even though Brida did not itself read the terms of the Policy, it should not be estopped from relying on its reasonable expectations. Martin argues, and this Court agrees, that there is a factual dispute as to whether Brida had knowledge that the Policy had a wetness exclusion.

Finally, there is a question of fact as to whether Brida suffered harm attributable to Martin's alleged failure to procure adequate coverage. Specifically, Martin maintains that superior coverage by Hartford was not available to Brida. In any event, even if Brida could establish that coverage co-extensive with its pre-existing policy with Liberty Mutual were available, there is a dispute of fact as to whether the loss sustained in December 2001 would have been covered under such a policy.

For these reasons, the motion for summary judgment by Brida against Martin must be denied so that a jury can resolve the numerous factual issues that remain.

**IV. CONCLUSION**

For the reasons explained <u>supra</u>, the Court will grant the motion for summary judgment by Hartford, and deny the motions for summary judgment by Brida.  The accompanying Order is entered.


**June 22, 2005**                              s/ *Jerome B. Simandle*
Date                                           JEROME B. SIMANDLE
                                               U.S. District Judge

15